# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.                                                    1:14-cr-84-WSD

ARTAVIUS BROWN,

                    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Artavius Brown's
("Defendant" or "Brown") Motion to Withdraw Guilty Plea [12].  Defendant
claims his decision to plead guilty on March 19, 2014, was without the benefit of
viewing various security surveillance videotapes of the armed bank robbery for
which he had been indicted, or of robberies that occurred in several Family Dollar
or General Dollar stores[1] (the "Retail Stores") that were committed before and after
the bank robbery for which he was indicted.  Defendant thus claims he was not
given a realistic evaluation of his options in this prosecution before pleading guilty.

---

[1] The parties generally refer to the stores as the "Dollar Stores," although they are
different retail chains.

## I.    BACKGROUND

Defendant and his co-defendant Ayron Collins were indicted on August 7, 2013.  They were charged with one count of conspiracy to commit a Hobbs Act bank robbery in violation of 18 U.S.C. § 1951(a) (Count One), one count of Hobbs Act bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count Two) and one count of using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

On December 16, 2013, Defendant Collins pled guilty to the conspiracy count of the Indictment.  At some date, apparently after indictment, the Government advised Brown that he also was a suspect in robberies of the Retail Stores.

Brown's trial on the counts in the Indictment was scheduled to begin on January 27, 2014.  Prior to this trial date, the parties requested that the trial be continued so they could engage in plea negotiations.  The Court reset the trial for March 24, 2014.

On March 19, 2014, shortly before the scheduled March 24, 2014, trial, Defendant Brown entered his plea of guilty to a criminal Information charging Defendant with two counts of brandishing, carrying and using a firearm during two

different robberies, including the bank named in the Indictment and one of the Retail Stores, in violation of 18 U. S. C. § 924(c)(1)(A)(ii).

The hearing, at which Defendant pled to the Information counts, lasted almost fifty (50) minutes. At it, the Court advised Defendant of his rights under the United States Constitution and the laws of the United States that Defendant was required to waive. Defendant waived the rights of which he was advised, including his right to a jury trial. The Court assured itself that Defendant understood the charges to which he was pleading guilty and explained to Brown in detail the sentencing process, the maximum punishment the Defendant faced, and that the Court could, if it decided it was appropriate, impose the maximum authorized punishment of life imprisonment. Defendant stated he understood the maximum punishment possible. Defendant was advised of the practical realities of a sentence of incarceration and supervised release, and the other consequences of pleading guilty. Defendant stated that he understood all of the terms of the plea agreement into which Defendant had entered.

The evidence of Defendant's use of a firearm in the bank and Retail Store robberies was described in detail. Defendant admitted he committed the robberies, that there were security surveillance videotapes of both robberies which he committed, that he brandished a firearm when committing the robberies, and that

he was guilty of both offenses.  Transcript of Plea Hearing on March 19, 2014

("Plea T.") [11].  The Court accepted Defendant's plea to the counts in the

Information and found Defendant guilty of both offenses.  Defendant's sentencing

was set for June 5, 2014.

On June 5, 2014, the Court received from Defendant a letter dated June 2,

2014.  In it, Defendant requested to withdraw his plea and requested appointment

of new counsel.  In his letter he stated:

> My appointed counsel misadvised me of all consequences
> as it relates to my case and did not give me all of the options
> available.  Furthermore, without this ill advised (sic) information,
> I would not have plead guilty.
>
> Accordingly, I'm requesting that you afford me at the very least a
> hearing on the above and appoint counsel to represent me in such.

The letter is attached as Exhibit A to this Order.

The Court converted the scheduled June 5, 2014, sentencing hearing to a

hearing on Defendant's request for new counsel, Defendant's trial counsel's

request to withdraw from his representation of Defendant[2], and Defendant's

Motion to Withdraw Plea (the "Motion to Withdraw") [8].[3]   At the June 5, 2014

---

[2]   Trial counsel advised the Court he intended to request to withdraw from
representation of Defendant.

[3]  Counsel filed the short Motion to Withdraw Plea on June 5, 2014, in anticipation
of the hearing.

hearing, the Court allowed counsel to withdraw and directed that new counsel be appointed.  A new appointment was made and Defendant's successor counsel filed Defendant's Brief in Support of Motion to Withdraw Guilty Plea (Br. Supp. Mot.") [12].  In it, Defendant stated he was not shown surveillance videotapes and, as a result, he did not receive the close advice of counsel.  He requested an evidentiary hearing on the Motion to Withdraw or, alternatively, that Defendant be allowed to withdraw his plea.  Id. at 11.  The Government did not oppose the request for an evidentiary hearing.  Government's Response to Defendant's Motion to Withdraw Guilty Plea [13 at 3-4].  An evidentiary hearing was conducted on August 11, 2014 [17].

## II.    DISCUSSION

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a plea of guilty after the court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).   "A pre-sentence motion to withdraw is to be liberally construed, but there is no absolute right to have a guilty plea withdrawn."  United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1998).   It is a defendant's burden to establish a fair and just reason for withdrawal.  See United States v. Cesal, 391 F.3d 1172, 1179 (11th Cir. 2004); vacated on other grounds at

345 U.S. 1101 (2005), reinstated at 2005 WL 1635303 (11th Cir. July 13, 2005).

See also

"To determine whether a defendant has given a fair and just reason for withdrawal, the district court examines the 'totality of the circumstances' [surrounding the plea] including : '(1) whether the close assistance of counsel was available to defendant in pleading guilty; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved ; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea'" (the "Withdrawal Factors"). Id. citing United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir. 2003).

The district court also can consider "the defendant's admission of factual guilt at the Rule 11 hearing and the timing of the motion to withdraw." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  The "timing of a defendant's attempted plea withdrawal is highly probative of motive, [so] close scrutiny of the chronology is important in adjudicating whether retraction is fair and just." United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992).  See also United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (delayed requests disfavored); United States v. Michaelson, 552 F.2d 472, 476 (2d Cir. 1977) (a defendant's change of heart after viewing presentence report insufficient reason to withdraw).

Whether to allow a defendant to withdraw a guilty plea is left to the sound discretion of the trial judge.  Cesal, 391 F.3d at 1179.  The Court now considers the totality of the circumstances in deciding whether to allow Defendant's plea to be withdrawn.

The Court notes first that Defendant concedes the Second Withdrawal Factor, admitting that his plea was knowing and voluntary.[4]  Defendant also noted that the "third [Withdrawal] [F]actor, conservation of judicial resources, is a factor to consider that may weigh in favor of denying the motion".  Br. Supp. Mot. at 9.  Defendant contends that the close assistance of counsel and prejudice to the government (Withdrawal Factors One and Four) are the central factors at issue here and the ones on which Defendant requested that an evidentiary hearing focus.  Id. at 11.[5]  At the August 11, 2014, evidentiary hearing, Defendant elected only to present evidence on the close assistance of counsel factor.  T. at 4.

_____

[4] Defendant stated:  "[T]he Court's review of the plea agreement was thorough as was the plea colloquy.  Accordingly, Mr. Brown cannot say at this time that his plea was not knowing and voluntary because of the thoroughness of the colloquy and because he stated he understood what he was doing." Br. Supp. Mot. at 8

[5]   At the beginning of the hearing, Defendant and the Government agreed the only Withdrawal Factors at issue are the close assistance of counsel and prejudice to the government.  Transcript of Evidentiary Hearing on August 11, 2014 ("T.") at 3-4.

1. <u>Close assistance of counsel</u>

The evaluation of the Defendant's request to withdraw his plea needs to be considered in context.  Defendant's trial counsel, Mr. Jeffrey Ertel, is with the Federal Defender Program in Atlanta, where he has been employed since 1996, except for a one-year leave of absence when he served as the interim Executive Director of the Georgia Resource Center.  He has been an attorney since 1992, working exclusively in public service as a criminal defense lawyer.[6]

This case was indicted and processed toward trial on charges relating to a Hobbs Act bank robbery conspiracy, bank robbery, and use of a firearm in connection with the bank robbery.  The Defendant understood that these offenses subjected him to a potential life sentence.  T. at 9.  Although the Indictment charges are related to robbery of a PNC bank branch, Defendant knew before he negotiated his plea agreement that the Government intended to supersede the Indictment to allege up to an additional 24 counts based on robberies of the Retail Stores.

The original January 27, 2014, trial date was continued at the request of counsel upon the representation that they needed additional time to discuss a

---

[6] Mr. Ertel has appeared before the Court on frequent occasions and he is a seasoned, accomplished defense lawyer whose reputation includes the zealous representation of his clients.

resolution short of a trial.  The testimony at the August 11, 2014, evidentiary

hearing shows these discussions were conducted and resulted in a negotiated plea

to a criminal Information charging two counts of use of a firearm in connection

with a crime of violence, one based on the robbery of the PNC Bank branch

alleged in the Indictment, and one based on the robbery of one of the Retail Stores.

On March 24, 2014, shortly before the second date set for trial, the

Government made available to Defendant a variety of evidence relating to the

Retail Store robberies.  This information was provided because the Information to

which Defendant agreed to plead included a firearm charge relating to a robbery of

a Retail Store.  The Retail Store robbery evidence had not previously been

produced to the Defendant, because no Retail Store robberies had been indicted.

Defendant's counsel scheduled a meeting with the Government to review the

Retail Store robberies evidence (the "Evidence Review Meeting").[7]  Brown's trial

counsel scheduled the meeting:  "To satisfy myself that the evidence on the dollar

robberies was sufficient, if you will, or strong enough to warrant Mr. Brown taking

the plea to the two 924(c)s, or basically the 32-year plea offer."  T. at 34-35.  The

evidence made available at the Evidence Review Meeting included photo line-ups

---

[7] Counsel recalled the meeting being in late February or early March, 2014.
Federal Bureau of Investigation Special Agent Burke stated the meeting was on
March 12, 2014.  He attended the meeting with counsel for the Government.

shown to clerks at the Retail Stores, surveillance videos for twelve to fifteen of the Retail Store robbery locations on the day of the robberies, still photographs from surveillance cameras taken at some of the robbery locations, and investigation reports.  T. at 35.   One of the still photos from one of the surveillance tapes is a good quality photograph of Defendant in one of the Retail Store locations that was robbed.  T. at 45-46, Hearing Exhibit ("Ex.") 7.

Defendant's trial counsel reviewed the security surveillance videotapes and the other material presented.  T. at 71-72.  Trial counsel also was told at the meeting that a number of Retail Store clerks, when shown the photo line-ups, identified Defendant as the person who robbed their store.[8]  Having reviewed the evidence of the Retail Store robberies, Defendant's trial counsel concluded that "the government had ample evidence to prove Mr. Brown guilty of those - - of at least a number of those offenses."  T. at 35.[9]

---

[8]   A copy of the materials, except for the surveillance videos which had been reviewed, were provided to Defendant's trial counsel at the Evidence Review Meeting.

[9] Trial counsel reviewed this evidence with Defendant.  Trial counsel and Defendant also had the statements of several people who provide evidence against Defendant.  One of the statements was from Ayron Collins, Defendant's co-defendant in the Indictment.  Collins told DeKalb County authorities of a statement made by Defendant:  "He (Defendant) was sayin how he was wanted for 25 armed robberies & he gotta do what he gotta do.  He said his face was all over the news & stuff."  T. at 43, Ex. 23.  Defendant is depicted in a "be on the lookout (BOLO)"

Counsel met with Defendant to discuss the offer to allow Defendant to plead guilty to a criminal Information alleging two 924(c) counts based on the bank and a Retail Store robbery.  Defendant acknowledged that his counsel went over with him all of the evidence that was produced by the Government at the Evidence Review Meeting.  T. at 21-23.  Defendant's trial counsel stated that he showed the Defendant "everything that [the Government] had given [me]" at the Evidence Review Meeting.  T. at 72.  They went over the photo line-ups and trial counsel told the Defendant that Retail Store clerks had identified him from the lineups. T. at 71-73.  Trial counsel also went over still photographs taken from Retail Store surveillance videotapes.  He told Defendant that some of the surveillance videotapes he reviewed during the Evidence Review Meeting were very good and he compared the videotapes he reviewed with the clear picture of Defendant that was taken from one surveillance videotape.  T. at 66-67, Ex. 7.  Trial counsel testified:  "I compared [the picture] to him.  I compared it to him, and I also

---

report seeking to identify the robber of one of the Retail Stores.  T. at 51, Ex. 23. Counsel testified at the hearing that Defendant's mother had "picked out the picture" of Defendant (referring to the BOLO that was in evidence) and that Defendant's "uncle was the getaway driver in the dollar store robberies and he was in custody and cooperating."  T. at 68.  Trial counsel also was given photograph extracts from surveillance videotapes depicting images of Defendant, some more clear than others.  The clarity may be impacted, because the still photographs were of videotape footage.  T. at 51, Exs. 5-12.

believed talked to him about that they were good quality.  I remember using the term Olan Mills quality.  They were very--in some of them, there was no doubt it was identical in quality to the blowup that we had, which I think was fairly close to the one in the bank which was very clear." T. at 68.  That is, trial counsel advised Defendant that the quality of certain of the surveillance videotapes of the robberies in which Defendant was involved was the same very clear quality as the still picture he showed to Defendant.  T. at 45-46.

Counsel also described his practice in representing defendants and the manner in which he discusses and provides evidence to them.

Q (the Court):  Is it your practice over these years that you have done this that if one of your clients were to say I really want to see that or I have got to look at that, that you would show it to them?

A (Defendant's counsel): Yes.

Q:  And in your practice, are there occasions when you describe something to somebody and they are satisfied that the description is reliable and they just accept that without saying I need to see the original or I need to look at that?

A:  Absolutely, absolutely

T. at 68.

Defendant complains that trial counsel who represented him from indictment through his plea hearing did not closely assist him in connection with his plea to the Information.  The basis upon which he makes this claim is scant.  He admits he

received all of the discovery produced by the Government to his lawyer.  He does not claim that his lawyer failed to give him a description and evaluation of the surveillance videotapes trial counsel saw during the Evidence Review Meeting. He does not dispute that his lawyer compared the quality of the surveillance tapes to the clear pictures of him in surveillance tape extract pictures.  He also does not dispute that his lawyer discussed with him the photo line-ups shown to Retail Store clerks and that he was identified by clerks who were shown the line-ups.  T. at 12. The only basis for his close assistance of counsel claim is that his trial counsel did not show him the surveillance videotapes and that the tapes were not given to him by his counsel in the days before his plea to the Information was entered.  Having reviewed the surveillance videotapes after he entered his plea, Defendant states he now wants to withdraw his plea based on the tapes he has reviewed.  T. at 11-12. When asked what he saw on the videotapes that is the basis for his request to withdraw, Defendant testified:

> Q (Defendant's counsel):  Now, let me ask you about your reaction to those videos.  Is anything--is there anything about those videos that changes your view of the case or what the best decision for you might be?
>
> A (Defendant):  Yes.
>
> Q:  And please explain to the Court how that is?

A:  I feel like that after seeing the video, that there is really nothing that you could say.  You can't see the person, who it is, that's entering and exiting the store.

T. at 11-12.

This claimed basis - - specifically that one could not see who was "entering and exiting" the store - - to support Defendant's current claim that he was denied the close assistance of counsel (i) is insufficient without more, to show that he did not receive adequate assistance from his lawyer, (ii) is discredited by other substantial evidence that he received close and effective assistance from his trial counsel, and (iii) is inconsistent with his testimony at his plea hearing.

Defendant was represented by a seasoned lawyer with significant years of experience.  The record is that trial counsel reviewed all of the evidence of all of the robberies Defendant is suspected of committing.  He showed to Defendant copies of the evidence which he received at the Evidence Review Meeting and he discussed the evidence with his client, later providing to him his own copies for review.  The evidence also is that, even though Defendant was not actually shown the surveillance videotapes, his counsel discussed the surveillance videotapes with Defendant, specifically by telling him about the clarity of them and what they depicted.  T. at 21.

Defendant's review of the videotapes after he sought to withdraw his plea has produced his now limited basis for withdrawal[10]—that the tapes did not show who was entering or exiting the store.  He does not claim that the videotapes do not depict what occurred at the store, does not claim he was not depicted in the surveillance videotapes or photo extracts as being present in the stores and does not claim that the clerks who were robbed mistakenly identified him.  The evidence is undisputed that Defendant's lawyer discussed the surveillance videotapes with him and evaluated their clarity and evidentiary value.

It was following trial counsel's discussion of the Retail Store robbery evidence with Brown, including trial counsel's description of the surveillance videotape evidence, that the Court was advised that Defendant wanted to enter a plea to a criminal Information alleging 924(c) firearm charges based on the bank and Retail Store robberies.  The Court's inquiry of the Defendant at the plea hearing was lengthy.  At the hearing, Defendant admitted that he discussed at length his decision to plead guilty to the bank and Retail Store robberies before deciding it was in his best interest to plead guilty to these two offenses.  Plea T. at 45.  He admitted that he entered the Retail Store and the bank that he robbed on

---

[10]   When Defendant initially stated he wanted to withdraw his plea, he did not mention that it was because he had not seen the videotapes.

May 26, and June 21, 2013, respectively, that he was shown on the surveillance videotapes of these robberies and that he brandished a firearm when committing both crimes.  His admission, under oath, that he committed these two crimes and that he was captured on surveillance videotapes committing them was unequivocal. Plea T. at 37-44.  The Court concluded the plea inquiry with this exchange—which provided Defendant the opportunity to express any reservation he had about pleading guilty:

> Q (the Court):  Mr. Brown, is there anything that I have gone over that you would like for me to go over again either because you just want to or because you didn't understand what we talked about the first time?
>
> A:  I understand everything.
>
> Q:  All right.  Is there anything that Mr. Ertel has told me that you disagreed with when he stated it?
>
> A:  No, your honor.
>
> Q:  And I know that you have had long discussions with [Mr. Ertel] about this, and having had those and thought about this decision, do you think it is in your best interest to plead guilty to these two charges?
>
> A:  Yes, your honor.

T. at 44-45.

The record here is compelling that the Defendant was provided close, competent assistance of trial counsel throughout this matter and especially in connection with the evidence and evaluation of the evidence presented at the

16

Evidence Review Meeting, including the surveillance videotapes, what they showed and the quality of the evidence they contain.  There was no indication that Defendant harbored any reservations about his decision to plead guilty.  As a result, the Court necessarily concludes that Defendant had close assistance of counsel and that his plea was knowing and voluntary after Defendant fully understood the consequences of his decision.  See United States v. Martines-Chaves, 131 F. App'x 151, 158 (11th Cir. 2005).  He stated expressly to the Court, when his plea was entered, that he was satisfied with his counsel's representation of him.  See United States v. Lancaster, 137 F. App'x 316, 319 (11th Cir. 2005) (finding close assistance of counsel where, inter alia, defendant said he was satisfied with his lawyer's representation of him).  The close assistance of counsel factor does not support withdrawal.[11]

    2.    <u>Prejudice to the Government</u>

   The Defendant waited two months after his March 19, 2014, guilty plea before moving to withdraw his plea.  The delay of Defendant's decision, besides

---

[11]   The evidence presented at the August 11, 2014, hearing also showed that trial counsel visited Brown at the facility where he was detained on October 13, 2013; January 20, 2014; March 17, 2014; March 27, 2014; April 11, 2014; May 15, 2014; and June 3, 2014.  T. Exs. 14-21.

casting doubt on whether Defendant really prefers a trial or simply wants to avoid his sentencing proceeding, has resulted in prejudice to the Government.

The withdrawal of a guilty plea, by its nature, delays the processing of a case.  In this particular case, there is a different adverse impact that supports a finding of prejudice.  Here, the Government and Defendant were proceeding toward trial on the bank robbery-based counts.  Both parties, however, were aware of more than twenty other Retail Store robberies that Defendant was suspected of committing, and Defendant was aware that the Government was considering seeking a superseding Indictment to assert some, if not all, of these other robbery offenses.  From January through early March 2014, the parties discussed a proposed resolution that resulted in two 924(c) counts to be asserted in an Information to which Defendant agreed to plead guilty.  This development make it unnecessary for the Government to seek a superseding Indictment to include charges based on the Retail Store robberies.  In reaching this resolution, the parties agreed to recommend a 32-year sentence to the Court.  As a result of these negotiations and the resolution reached, the Government withheld active investigation of, and indictment on, the Retail Store robberies electing instead to include one of the robberies to support Count One of the Information.

Agent Burke testified about the difficulty in preparing for a trial on robberies of the kind at issue here, especially where the Retail Store robbery investigations were conducted by local law enforcement and where a resolution of the federal claims was expected to relieve federal investigators from having to conduct a further investigation of the Retail Store robberies.[12]  Significant additional investigative work would be necessary to prepare the case for trial.  T. at 78-80. The Retail Stores that were robbed experience employee turnover and the Government is unaware of the current whereabouts of witnesses because they considered the case resolved with this plea.  T. at 79.  To allow the plea to be withdrawn now would necessarily prejudice the Government.  United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006) (limitation of investigation on expectation of and reliance on plea can constitute prejudice).  Brown did contest this evidence at the evidentiary hearing and does not contend that prejudice to the Government will result.  While the scope of the prejudice is difficult to quantify, common sense supports that it exists.  This prejudice is aggravated by the Defendant's decision to raise his close assistance of counsel claims on the eve of his sentencing.

---

[12]   Special Agent Burke, who testified at the August 11, 2014 evidentiary hearing, told local investigators Brown was expected to enter a guilty plea.  T. at 76-77.

3.  <u>Weighing of the Factors</u>

The Defendant concedes that the voluntary and knowing plea and judicial efficiency factors favor denial of the request to withdrawal Defendant's plea. Defendant also does not contest that there will be prejudice to the Government if withdrawal is allowed.  The Court, in fact, finds there is prejudice that weighs against withdrawal.

The focus of this matter has been, and is on, whether Defendant was denied close assistance of counsel as a result, as Defendant asserts, that had he reviewed the surveillance videotapes, he would not have pled guilty.  T. at 18.  This argument is discredited by the evidence and logic.  The evidence is that Defendant's trial counsel communicated to Defendant what the surveillance videotapes showed, communicated the quality of it, objectively comparing it to at least one clear photograph copied from the surveillance videotapes, the evidentiary value of which Defendant was advised by his trial counsel.  Trial counsel described to Brown the photo line-ups shown to clerks from which Defendant was identified. It was only after this meeting with Defendant, and he was able to digest the other information that was provided to him by the Government at the Evidence Review Meeting, that Defendant appeared before the Court to enter his plea of guilty to the counts in the Information.  During that proceeding, Defendant admitted to the

20

crimes and his role in committing them, including that there were surveillance videotapes of the commission of the offenses.  Importantly, in his letter to the Court dated June 2, 2014, Defendant represented to the Court that he wanted to withdraw his plea, not because he had seen or not seen the videotapes but because he was "misadvised of the consequences" of his case and not given "all of the options available."

The facts here simply do not present a credible case to allow Defendant's plea to be withdrawn, because Defendant has not shown a fair and just reason to withdraw his plea.  Fed. R. Crim. P. 11(d)(2)(B).  Rule 32 was not intended "to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice."  United States v. Hurtado, 846 F.2d 995, 997 (11th Cir. 1988) (citing United States v. Carr, 740 F.2d 339, 345 (5th Cir. 1984).  That is what appears happened here.  As Defendant neared his sentencing, he faced the consequences of his conduct.  It is consistent with the pattern of his response to the criminal justice system in which he is now engaged, including his decision to plead guilty only on the eve of trial, after it had once been continued.  It is time now for that process to conclude with the imposition of sentence.

**III.    CONCLUSION**

For the reasons stated above, and applying the four withdrawal criteria, the Court denies the plea withdrawal request.

Accordingly, and for the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Artavius Brown's Motion to Withdraw Guilty Plea [8] is **DENIED.**

**SO ORDERED** this 19th day of August, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE